IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **KIMBERLY P. MAYFIELD,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-CV-00566-O** |
| | § | |
| **MARCIA L. FUDGE, SECRETARY, U.S.** | § | |
| **DEPARTMENT OF HOUSING & URBAN** | § | |
| **DEVELOPMENT,** | § | |
| | § | |
| *Defendant.* | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court is Defendant Marcia L. Fudge ("Fudge" or "Defendant")'s Motion for Summary Judgment (ECF No. 35), Brief in Support (ECF No. 36), and Appendix (ECF No. 37), filed February 21, 2024; Plaintiff's Response (ECF No. 40) and Appendix (ECF No. 41), filed on March 13, 2024; and Defendant's Reply (ECF No. 42), filed on March 27, 2024. Having carefully considered the briefing and applicable law, Defendant's motion is **GRANTED in part** and **DENIED in part** for the reasons stated herein.

## I.      BACKGROUND

Plaintiff Kimberly P. Mayfield ("Mayfield") filed this suit against Fudge—as she is the proper party in a suit against the United States Department of Housing & Urban Development ("HUD")—alleging eleven causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"): (1) "Sex Discrimination-Failure to Promote as ARC Litigation-Pretext;" (2) "Sex Discrimination-Failure to

Promote as ARC Litigation-Mixed Motive;"[1] (3) "Age Discrimination-Failure to Promote as ARC Litigation-Pretext;" (4) "Age Discrimination-Failure to Promote as ARC Litigation-Mixed Motive;" (5) "Sex Discrimination-Failure to Promote as Managing Attorney-Pretext;" (6) "Sex Discrimination-Failure to Promote as Managing Attorney-Mixed Motive;" (7) "Age Discrimination-Failure to Promote as Managing Attorney-Pretext;" (8) "Age Discrimination-Failure to Promote as Managing Attorney-Mixed Motive;" (9) "Discrimination-Hostile and Abusive Work Environment;"[2] (10) "Retaliatory Hostile Work Environment;"[3] and (11) "Retaliation-Failure to Promote."[4]

Mayfield is a 58-year-old female who is an attorney for HUD in their Region VI office in Fort Worth, Texas.[5] Mayfield began her employment with HUD in June 1991.[6] Mayfield's employment with HUD went seemingly smooth until 2018. In early 2018, HUD notified its Region VI employees of an opening for a position titled "Supervisory Trial Attorney-Associate Regional Counsel for Litigation" (the "ARC Litigation Position").[7] Mayfield applied for the ARC

---

[1] The Fifth Circuit has adopted a modified *McDonald Douglas* framework for Title VII "mixed-motive" cases. *E.g.*, *Keelan v. Majesco Software, Inc*., 407 F.3d 332, 341 (5th Cir. 2005); *Rachid v. Jack In The Box, Inc*., 376 F.3d 305, 312 (5th Cir. 2004). This modified approach changes the analysis at step three. *Keelan*, 407 F.3d at 341. Here, Defendant does not distinguish the "pretext" and "mixed motive" claims in her brief, nor do the parties address this modified third step. *See generally* Defendant's Brief in Support ("Def.'s Br."), ECF No. 36. Accordingly, Defendant's Motion for Summary Judgment is **DENIED** with regard to all of the Title VII "mixed motive" claims.
[2] In her Response and Brief in Support, Mayfield "waives" her Discrimination-Hostile and Abusive Work Environment claim. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** with regard to that claim. *See* Plaintiff's Response ("Pl.'s Resp.") at 7 n.1, ECF No. 39 ("Mayfield waives her hostile work environment claims but does not waive her retaliatory work environment claims based on recent Fifth Circuit opinions."); *see also* Plaintiff's Brief in Support ("Pl.'s Br.") at 1 n.1, ECF No. 40 ("Mayfield waives her claim of hostile work environment.").
[3] The Court concludes that it is appropriate to **CARRY** Defendant's motion with regard to Mayfield's Retaliatory Hostile Work Environment Claim through trial. Accordingly, this claim will not be discussed herein.
[4] Plaintiff's Complaint ("Pl.'s Compl.") at 48–58, ECF No. 1
[5] *Id.* at 1.
[6] *Id.*
[7] *Id.*

Litigation Position and was interviewed on March 6, 2018.[8]  After the interviews were completed, HUD hired Marcus R. Patton ("Patton") for the ARC Ligation Position.[9]  Feeling that she had "markedly superior qualifications" to Patton, on May 7, 2018, Mayfield filed an informal EEO complaint alleging sex and age discrimination.[10]  On August 18, 2018, Mayfield filed her formal administrative complaint regarding the ARC Litigation Position.[11]

On June 18, 2018, Mayfield submitted a written request for a lateral transfer from HUD's litigation division to HUD's program services division with an effective date of July 22, 2018.[12]  On July 30, 2018, Mayfield received confirmation of her transfer, with the requested effective date.[13]  Subsequently, on September 8, 2018, Mayfield filed a second formal administrative complaint alleging that HUD retaliated against her "by delaying her lateral reassignment," "limiting her work assignments," "assigning [] Mayfield work disproportionate to other program attorneys," "announcing in a staff meeting and in an email that [] Mayfield required mentoring," and "isolating [] Mayfield."[14]  Mayfield consolidated her two formal EEO complaints on September 21, 2018.[15]

A few years later, in July 2021, the Region VI attorneys and staff were informed of a newly created Managing Attorney Position.[16]  On August 24, 2021, the Managing Attorney Position was officially posted.[17]  Mayfield applied and was interviewed for the position on September 15,

---

[8] *Id.* at 2
[9] *Id.*
[10] *Id.*
[11] *Id.* at 5.
[12] Defendant's Appendix in Support ("Def.'s App.") at 54, ECF No. 37.
[13] Pl.'s Compl. at 38, ECF No. 1; Def.'s Br. at 16, ECF No. 36.
[14] Pl.'s Compl. at 36, ECF No. 1.
[15] *Id.*
[16] *Id.* at 28.
[17] *Id.*

2021.[18]  Ultimately, HUD hired Joshua S. Gold ("Gold") for the Managing Attorney Position. Subsequently, on November 12, 2021, Mayfield filed her third formal EEO complaint alleging that she was not chosen for the Managing Attorney Position because of retaliation and discrimination based on her sex and age.[19]  On May 4, 2023, Mayfield received the final agency decision denying her three complaints.[20]  Mayfield brought the above styled and numbered case on June 6, 2023.[21]

## II.    SUMMARY JUDGMENT STANDARD

The moving party is entitled to summary judgment as a matter of law when the pleadings and evidence before the court show that no genuine issue exists as to any material fact.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "To determine whether there are any genuine issues of material fact, the court must first consult the applicable substantive law to ascertain what factual issues are material." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  Disposing of a case through summary judgment serves to reinforce the purpose of the Federal Rules of Civil Procedure "to achieve the just, speedy, and inexpensive determination of actions, and when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

All of the evidence must be viewed in the light most favorable to the nonmovant, but the movant may not satisfy his or her summary judgment burden with either conclusory allegations or unsubstantiated assertions.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citations omitted); *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir. 2002) (citations omitted).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury

---

[18] *Id.* at 3.
[19] *Id.*
[20] *Id.* at 5.
[21] *See generally id.* at 1–60 (showing filing date of June 6, 2023)..

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (cleaned up). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Although the Court is required to consider only the cited materials, it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). Nevertheless, "Rule 56 does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citations omitted).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex*, 477 U.S. at 325). "The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists." *Id*.

## III.   ANALYSIS

In her Motion for Summary Judgment, Defendant argues that she is entitled to summary judgment on Mayfield's retaliation and discrimination claims because Mayfield cannot carry her burden under the *McDonald Douglas* framework.[22] In response, Mayfield claims that Defendant has failed to meet her burden of articulating a nondiscriminatory reason for Mayfield's non-

---

[22] Def.'s Br. at 19–35, ECF No. 36.

selection.[23]  Additionally, Mayfield asserts that even if Defendant had stated a nondiscriminatory reason, she has met her burden of establishing pretext.[24]

### A.  Title VII Claims

Because Mayfield alleges discrimination under Title VII, the Court engages in the requisite burden-shifting framework analyses first established in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973), for such claims.  "To succeed on a claim of intentional discrimination under Title VII, Section 1983, or Section 1981, a plaintiff must first prove a prima facie case of discrimination."  *Wallace v. Texas Tech Univ*., 80 F.3d 1042, 1047 (5th Cir. 1996) (collecting cases)).  Under Title VII, "it shall be an unlawful employment practice for an employer—to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In other words, "an employer who intentionally treats a person worse because of sex—such as by firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII."  *Bostock v. Clayton Cnty.*, 590 U.S. 644, 658 (2020). "It doesn't matter if other factors besides the plaintiff's sex contributed to the decision."  *Id.* at 659.  "[I]f changing the employee's sex would have yielded a different choice by the employer— a statutory violation has occurred."  *Id.* at 659–60.

"A plaintiff can prove a claim of intentional discrimination by either direct or circumstantial evidence."  *Russell v. McKinney Hosp*. *Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Regarding direct evidence, the Fifth Circuit has explained that:

> Direct evidence [of discriminatory intent] is evidence which, if believed, proves the fact without inference or presumption. . . . It includes any statement or document

---

[23] Pl.'s Br. at 15–22, ECF No. 40.
[24] *Id.* at 23–43.

which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action.

*Gaalla v. Brown,* 460 F. App'x 469, 479 (5th Cir. 2012) (internal quotations omitted).

"Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas*."  *Russell*, 235 F.3d at 222.  "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus . . . , the evidence is circumstantial, not direct."  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897–98 (5th Cir. 2002).  The Fifth Circuit has explained the three-step *McDonnell Douglas* framework as follows:

> Under that framework, [a plaintiff] must make out a prima facie case of discrimination. If she succeeds, [a defending employer] must respond with a legitimate, nondiscriminatory reason for terminating [the plaintiff].  Then the burden shifts back to [the plaintiff], who must counter with substantial evidence that [the defending employer's] proffered reason is pretextual.

*Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022) (cleaned up).

At the first step, "[t]he particular elements of a prima facie case of discrimination vary slightly depending on the nature of the claim."  *Lee v. BASF Corp.*, No. 4:22-CV-01581, 2023 WL 7336871, at *2 (S.D. Tex. Nov. 7, 2023), *R. & R. adopted by* 2023 WL 8373181 (S.D. Tex. Dec. 4, 2023).  As relevant here, a plaintiff establishes a prima facie case of discrimination for a failure-to-hire claim by demonstrating that: (1) she is a member of a protected group at the relevant time; (2) she was qualified for the position; (3) she was rejected; and (4) the position was filled by a person not in the protected class.  *Cramer v. NEC Corp.*, 469 F. App'x 461, 464 (5th Cir. 2012) (per curiam) (citation omitted).  Upon such a showing, the second step of the *McDonnell Douglas* framework requires an employer to  produce a legitimate, nondiscriminatory reason for terminating a plaintiff. *Id.*  However, this second step "'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v.*

*Hicks*, 509 U.S. 502, 509 (1993)).  If the employer successfully provides a legitimate reason, "the plaintiff can rely on evidence that the employer's reasons were a pretext for unlawful discrimination" to satisfy the third step of the *McDonnell Douglas* framework.  *Russell*, 235 F.3d at 222 (citing 411 U.S. at 804).

### 1.   Failure to Promote to the ARC Litigation Position – Pretext

As a preliminary matter, Defendant does not dispute that Mayfield has properly established a prima facie case of sex discrimination as Mayfield has shown that: (1) she is a member of a protected group—female; (2) she was qualified for the position; (3) she was not hired for the ARC Litigation Position; and (4) the position was filled by a person not in the protected class—Patton, a male.  *Cramer*, 469 F. App'x at 464.  Consequently, under the *McDonald Douglas* framework, the Court finds that Mayfield satisfies the first step, and the burden shifts to Defendant to articulate a nondiscriminatory reason for not promoting Mayfield to the ARC Litigation Position.

At step two, Defendant satisfies her burden of articulating a nondiscriminatory reason for choosing Patton over Mayfield, and the other candidates, for the ARC Litigation Position. Specifically, Defendant provides that Patton was chosen because he was more qualified for the position as he had, *inter alia*, superior labor and employment expertise.[25]  In support of this stated reason, Defendant points to the affidavits submitted by the three interview panel members, William J. Daley ("Daley"), Jack Stark ("Stark"), and Sakeena Adams ("Adams").[26]  In her response, Mayfield argues that Defendant has failed to carry her burden because: (1) the panel members' affidavits are "vague and ambiguous;" (2) Adams' later affidavit—providing more details as to why Patton was chosen over Mayfield—is an improper attempt to provide reasoning years later;

---

[25] Def.'s Br. at 3, 21, ECF No. 36.
[26] Def.'s App. at 71–101, 141–158, ECF No. 37.

and (3) Defendant provides "false testimony in this case."[27]

Mayfield's arguments are unavailing for two reasons.  First, Mayfield's arguments are better suited for step three because Defendant's burden in this regard is one of production, not persuasion such that it "can involve no credibility assessment."  *Hicks*, 509 U.S. at 509–10. Second, the fact that Adams' second affidavit contains more details is insufficient to establish pretext and, thus, cannot be sufficient to overcome the lesser standard of production.  *See Minnis v. Bd. of Supervisors of La. State Univ.*, 620 F. App'x 215, 220 (5th Cir. 2015) (providing that "proof of an employer's reasons becoming more detailed as the dispute moves beyond the initial notice to an employee and enters into adversarial proceedings is[] insufficient to create a jury question regarding pretext absent an actual inconsistency").  Consequently, the Court finds that Defendant has carried her burden at step two.

Turning now to the third step, Mayfield once again bears the burden and must point to substantial evidence that Defendant's stated nondiscriminatory reason was pretextual.  *Cf. Edrich v. Dallas Coll.*, No. 3:21-CV-02963-E, 2023 WL 8606816, at *13 (N.D. Tex. Dec. 12, 2023) (requiring "substantial evidence" that the given reason for not hiring the plaintiff was pretextual to satisfy the third prong)).  In this case, Mayfield's road to showing substantial evidence of pretext is complicated by two presumptions that no discriminatory motive was involved in the hiring decision.  The first inference comes from the fact that Daley—who hired Mayfield twice[28]—was one of the decision makers.  *Washington v. Tarrant Cnty.*, No. 4:18-CV-020-A, 2018 WL 4283559, at *5 (N.D. Tex. Sept. 7, 2018) (providing that "when the same actor both hires and makes decisions concerning promotion, the 'same actor' inference creates a presumption that no discriminatory motive was involved in the decision-making") (first citing *Spears v. Patterson UTI*

---

[27] Pl.'s Br. at 17–18, ECF No. 40.
[28] Daley originally hired Mayfield in 1991 and then again in 1999.  Def.'s App. at 10, 59, ECF No. 37.

*Drilling Co*., 337 F. App'x 416, 421–22 (5th Cir. 2009) (per curiam); and then citing *Brown v. CSC Logic, Inc*., 82 F.3d 651, 658 (5th Cir. 1996), *abrogated on other grounds by Reeves*, 530 U.S. at 151). The second inference comes from the fact that Adams, one of the three panel members, is also a female and, thus, is part of Mayfield's relevant protected class. *Cf. Chapman v. Dall. Morning News, L.P*., No. 3:06-cv-2211-B, 2008 WL 2185389, at *9 (N.D. Tex. May 27, 2008) (explaining that plaintiff's claim of age and gender discrimination was undermined by the fact that the ultimate decision-maker was herself "a female over the age of 40 and thus within the same protected class" as the plaintiff); *Brown*, 82 F.3d at 658 (inferring no age discrimination as the motive behind termination because the "same actor" responsible for hiring and firing was older that the plaintiff). While these inferences are rebuttable, they create a presumption that no discrimination occurred. *Spears*, 377 F. App'x at 421–22.

Mayfield's main argument[29] that Defendant's stated nondiscriminatory reason was pretextual is that she has provided "a mountain of evidence" that she was "substantially more qualified than Patton for the position of ARC Litigation."[30] For Mayfield to show that Defendant's reason is pretextual because she is "substantially more qualified," she must "present evidence from which a jury could conclude that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Moss v. BMC Software, Inc*., 610 F.3d 917, 922 (5th Cir. 2010) (internal quotations and citation omitted). Additionally, "unless the qualifications are so widely disparate that no reasonable employer would

---

[29] Mayfield, at the very end of her section arguing pretext, asserts that she has also provided sufficient evidence of pretext because the panel members' affidavits were vague and because Adams' subsequent affidavit was more detailed. *Id.* at 17–18, 31. As discussed above, the more detailed affidavit is not sufficient to establish pretext. *E.g., Minnis*, 620 F. App'x at 220. Additionally, having reviewed the panel members' affidavits, the Court finds that they were sufficiently detailed regarding why they selected Patton over Mayfield. Accordingly, the Court is not persuaded by either argument.
[30] Pl.'s Br. at 26, ECF No. 40.

have made the same decision, any differences in qualifications are generally not probative evidence of discrimination." *Id.* (internal quotations and citations omitted).

In support of her argument that she was substantially more qualified than Patton, Mayfield points to: (1) the deposition testimony of Mary Merchant ("Merchant"); and (2) an affidavit from Frank Elmer ("Elmer").[31]  Additionally, Mayfield attacks Patton's resume and argues that "many of Patton's listed litigation experience[s] were contrived by Defendant to bolster his resume."[32] Further, Mayfield provides the following evidence to rebut the same actor inference: (1) the deposition testimony of Wheaton-Rodriguez; and (2) text messages between herself and Merchant.[33]  The Court begins with whether Mayfield's evidence is sufficient to rebut the two presumptions that discrimination did not occur, then it will turn to whether she has provided sufficient evidence to establish pretext.

First, Mayfield's evidence is insufficient to rebut both presumptions that discrimination did not occur.  The Court finds the text messages between Mayfield and Merchant to be unpersuasive.  Setting that evidence aside, even assuming without deciding that Wheaton-Rodriguez's testimony is enough to rebut the same-actor presumption created by Daley, Mayfield fails to provide evidence to rebut the second presumption created by Adams.  Consequently, Mayfield faces a very high bar to sufficiently establish pretext.

Here, Mayfield fails to clear that high bar, as her evidence is insufficient to establish that Defendant's stated nondiscriminatory reason is pretextual.  The first piece of evidence provided by Mayfield is Merchant's deposition testimony.[34]  In that testimony, Merchant testified that Mayfield was qualified for the ARC Litigation position because "she and I had worked from '90

---

[31] *Id.* at 26–27 (citing Plaintiff's Appendix ("Pl.'s App.") at 122, 405–06, 414–15, ECF No. 41).
[32] *Id.* at 28–31.
[33] *Id.* at 27–28 (citing Pl.'s App. at 437–38, 515–15, 519, 522–523, ECF No. 41).
[34] *Id.* at 26–27 (citing Pl.'s App. at 405–06, ECF No. 41).

through 98' on fair housing. We had worked on labor, personnel. I knew she had also worked at the DEC for a few years."[35]  Additionally, Merchant testified that she encouraged Mayfield to apply because "I thought she would do a good job at it," and that she felt both herself and Mayfield "had in our eyes a lot more qualification for the position than he did."[36]  The second piece of evidence that Mayfield provides is an affidavit from Elmer.[37]  In his affidavit, Elmer states that "there is no question that Ms. Mayfield is one of the most experienced attorneys in HUD," and lists many of Mayfield's experiences.[38]  Finally, Mayfield attacks many of Patton's resume entries, arguing that they should not carry as much weight as Defendant gave them.[39]  Notably, however, Mayfield does not appear to dispute that Patton actually had those experiences or that he was qualified for the position. Instead, Mayfield only contends that Patton's experiences are trumped up and that she was "substantially more qualified."[40]  While the Court finds that Mayfield was qualified for the position—a fact confirmed by Defendant and not disputed in Defendant's briefing[41]—she has failed to show that her qualifications "'leap from the record and cry out to all who would listen that [s]he was vastly—or even clearly—more qualified [than Patton] for the subject job.'"  *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2022) (citation omitted). Therefore, the Court finds that Mayfield has failed to carry her burden of providing substantial evidence of pretext.

Having determined that Mayfield has failed to carry her burden to establish that Defendant's stated nondiscriminatory reason was pretextual, there is no dispute of material fact as

---

[35] Pl.'s App. at 405–15, ECF No. 41.
[36] *Id.*
[37] Pl.'s Br. at 26–27, ECF No. 40 (citing Pl.'s App. at 122, ECF No. 41).
[38] Pl.'s App. at 122, ECF No. 41.
[39] Pl.'s Br. at 28–31, ECF No. 40.
[40] *Id.* at 26.
[41] Def.'s Br. at 3, ECF No. 36.

to Mayfield's Title VII Sex Discrimination–Failure to Promote to the ARC Litigation Position–Pretext claim. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** with regard to that claim.

### 2.   Failure to Promote to the Managing Attorney Position–Pretext

As with the ARC Litigation Position, Defendant does not dispute that Mayfield has properly established a prima facie case of sex discrimination as Mayfield has shown that: (1) she is a member of a protected group—female; (2) she was qualified for the position; (3) she was not hired for the Managing Attorney Position; and (4) the position was filled by a person not in the protected class—Gold, a male. *See Cramer*, 469 F. App'x at 464 (identifying the requirements to establish a prima facie case of discrimination for a failure-to-hire claim). Consequently, under the *McDonald Douglas* framework, the Court finds that Mayfield has satisfied the first step, shifting the burden to Defendant to articulate a nondiscriminatory reason for not promoting Mayfield to the Managing Attorney Position.

At step two, Defendant satisfies her burden of articulating a nondiscriminatory reason for choosing Gold over Mayfield, and the other candidates, for the Managing Attorney Position. Specifically, Defendant provides that Gold was chosen because: (1) "Gold had wide and varied HUD Program knowledge and experience," while Mayfield did not have the same knowledge and experience because she "had only done program work for three years;"[42] (2) "Gold had demonstrated an ability to tackle HUD's 'big problem projects' with the 'least amount of direction;'"[43] and (3) "Gold aced the interview" and "Mayfield [] flubbed hers."[44] Accordingly, the Court finds that Defendant has carried her burden at step two.

---

[42] Def.'s Br. at 29 (citing Def.'s App. at 120–21, 130–32).
[43] *Id.* (citing Def.'s App. at 133–34, 208).
[44] *Id.* (citing Def.'s App. at 20, 209).

Turning now to step three, Mayfield, as discussed above, bears the burden of showing "substantial evidence" that Defendant's stated nondiscriminatory reasons were pretextual. *Edrich*, 2023 WL 8606816, at *13. Just as with the ARC Litigation Position, Mayfield's road to showing substantial evidence of pretext is made more difficult by a presumption that no discriminatory motive was involved in the hiring decision. The presumption comes from the fact that Adams was the ultimate decision maker and Merchant was a member of the three-person panel. Because Adams and Merchant are female and a part of Mayfield's relevant protected class, there is a rebuttable presumption that no discrimination occurred. *See Chapman*, 2008 WL 2185389, at *9 (recognizing rebuttable presumption of no discrimination when decision-maker was in the same age and gender classes as the plaintiff).

Here, Mayfield argues that Defendant's stated reasons are pretextual because: (1) Defendant selected Gold before Mayfield's interview; (2) Defendant allowed Gold, and not her, to attend trainings prior to the position being posted; (3) Defendant changed the job announcement to prejudice her chances; (4) Patton was on the interview panel despite her pending EEO complaint involving him; and (5) Defendant's counsel typed Merchant's interview notes and attached them to Merchant's affidavit submitted to the EEO investigator.[45] The Court will address each in turn.

### i. The evidence that Mayfield relies on does not support her argument that Gold was preselected.

Mayfield's first argument in support of showing pretext is that Gold was selected for the Managing Attorney Position before her interview.[46] Mayfield points to two documents in support her allegation that Gold was hired "on or before August 31, 2021," when her interview did not

---

[45] Pl.'s Br. at 31–33, ECF no. 40.
[46] *Id.* at 35–37.

occur until September 15, 2021.[47]  The first document is a staffing report sheet.[48]   Mayfield argues

that the staffing report sheet shows that Gold was hired on or before August 31, 2021, because

Gold is listed as the "Managing Attorney" and the document header says "Staffing report as of:

August 31, 2021.[49]  However, what Mayfield fails to mention, as pointed out by Defendant, is that

document is actually six pages long.[50]  Defendant provided a sworn affidavit—from the paralegal

who drafted the staffing report sheet—that swears that this heading was simply a clerical error

because she forgot to change the header on the second page.[51]   A review of the full document

confirms the paralegal's affidavit and reveals two things.  First, the first page of the document

states "As of September 30, 2021 . . . Staff on Board As of September 30, 2021."[52]  Second, on

the same page as the clerical error, it states: "Joshua Gold promoted 9/26 to Managing Attorney."[53]

Furthermore, Defendant supplies the staffing report sheet for August 31, 2021, on which all of the

dates match.[54]  In her response, Mayfield offers no evidence to refute this evidence provided by

Defendant.[55]   Accordingly, the Court finds that the staffing report sheet does not support

Mayfield's allegation that Gold was hired on or before August 31, 2021.

   The second document is a "Certificate of Eligibles."[56]  In the footer of the Certificate of

Eligibles there is a time stamp that reads "8/31/2021 8:22 EDT."[57]  Additionally, the Certificate of

Eligibles states that Gold had been selected for the Managing Attorney Position.[58] Mayfield argues

---

[47] *Id.*
[48] *Id.* (citing Pl.'s App. at 578, 591, ECF No. 41).
[49] *Id.*
[50] Def.'s Br. at 32, ECF No. 36 (citing Def.'s App. at 364–69, ECF No. 37).
[51] Def.'s App. at 354, ECF No. 37.
[52] *Id.* at 364.
[53] *Id.* at 365.
[54] *Id.* at 357–61.
[55] *See generally* Pl.'s Br. 1–49, ECF No. 40.
[56] *Id.* at 35–37 (citing Pl.'s App. at 346–47, ECF No. 41).
[57] Pl.'s App. at 346–47, ECF No. 41.
[58] *Id.*

that this shows that Gold had been selected on or before August 31, 2021.[59]  Defendant asserts that Mayfield is once again mistaken regarding what the date reflects.[60]  In support, Defendant offers an affidavit from the HR Specialist who handled the document, as well as other evidence.[61]  As pointed out by Defendant, and testified to by the HR Specialist, the relevant document shows that the Certificate of Eligibles was created on "8/31/2021," and the date on which Gold's status was changed to "selected" is "9/17/2021."[62]  In her response, Mayfield fails to offer sufficient evidence to rebut the evidence provided by Defendant.[63]  Therefore, the Court finds that the Certificate of Eligibles does not support Mayfield's allegation that Gold was hired on or before August 31, 2021. Accordingly, the Court finds that Mayfield has failed to provide substantial evidence that Gold was hired before her interview.

> ### ii.  Mayfield's evidence does not support her argument that Gold was groomed.

Mayfield's second argument in support of showing pretext is that Gold was groomed for the position.[64]  While Mayfield confusingly uses Patton and Gold interchangeably, it is clear that Mayfield feels Gold was groomed for the position because he was approved for two "supervisory [training] courses offered by OPM."[65]  Mayfield also points to an email sent by Adams and argues that despite its title, "Justification for Training Request of Josh Gold for Supervisory Training," it is actually evidence that Adams groomed Gold for the position.[66]  In her reply, Defendant argues that Mayfield's arguments fail because: (1) Mayfield received approval for and attended more

---

[59] Pl.'s Br. at 35–37, ECF No. 40.
[60] Def.'s Br. at 33–34, ECF No. 36.
[61] *Id.* (citing Def.'s App. at 377–79, 383, ECF No. 37).
[62] Def.'s App. At 377–79, 383, ECF No. 37.
[63] *See generally* Pl.'s Br. at 1–49, ECF No. 40.
[64] *Id.* at 37–38.
[65] *Id.*
[66] *Id.* (citing Pl.'s App. at 237, ECF No. 41).

OPM supervisory courses than Gold; (2) Mayfield was approved for and attended training courses during the same relevant time period; (3) Gold requested to be enrolled in the OPM supervisory course and Mayfield did not; and (4) Adams testified that she would have written a similar email to the one she wrote for Gold had Mayfield requested to be enrolled in the course.[67]  A review of the evidence supports Defendant's assertions.  Therefore, Mayfield has failed to provide evidence that she was treated any differently, or was given any less opportunities, with regard to attending training courses.  Accordingly, the Court finds that Mayfield has failed to provide substantial evidence that Gold was groomed for the Managing Attorney Position.

### iii.   Mayfield fails to establish pretext through the alleged change to the job announcement.

Mayfield's third argument in support of showing pretext is that Defendant changed the position description for Managing Attorney in order to prejudice her.[68]  Specifically, Mayfield asserts that Defendant intentionally removed working closely with AUSAs as a responsibility in the job announcement.[69]  However, as Mayfield states in her Brief, "Adams sent the standard position description for Managing Attorney to [the interview panel]" who were told by "the Chief Counsels in Region VI" not to tweak it.[70]  Additionally, the record is clear that the panel did consider her ability to interact with AUSAs as she admits that the members of the panel found that she has had "several prior instances of difficult interactions" with AUSAs.[71]  Accordingly, the Court finds that Mayfield has failed to provided substantial evidence that Defendant changed the official job description to prejudice her.

---

[67] Defendant's Reply ("Def.'s Reply") at 16–17, ECF No. 42 (first citing to Pl.'s App. at 199, ECF No. 41; then citing Pl.'s Compl. ¶¶ 278, 283, 285, ECF No. 1; and then citing Def.'s App. at 150, ECF No. 37).
[68] Pl.'s Br. at 38–39, ECF No. 40.
[69] *Id.* at 33, 38–39.
[70] *Id.* at 38.
[71] *Id.* at 19–20.

####    iv.    **Patton's presence on the interview panel is not substantial evidence of pretext.**

Next, Mayfield argues that Defendant's stated reason is pretextual because one of the three interview panel members was Patton.[72]  While Patton was awarded the ARC Litigation Position, which was the basis of Mayfield's first EEO complaint, she has not alleged that Patton discriminated against her in any way.[73]  Furthermore, Mayfield does not allege that the other two panel members—one of which was Merchant who encouraged Mayfield to apply and was "rooting for her"[74]—discriminated against her in any way.[75]  Accordingly, the Court finds that Mayfield has failed to provide substantial evidence that Patton's presence on the interview panel establishes pretext.

####    v.    **The typed interview notes do not evidence any wrongdoing by Defendant.**

Finally, Mayfield argues that Defendant's counsel falsified evidence by producing a typed transcription of Merchant's handwritten notes related to the interview of a candidate not at issue here.[76]  While Mayfield alleges that Defendant attached the typed notes to Merchant's affidavit to the EEO investigator, Defendant states that it did not, but, rather, accidently produced it to Mayfield with the documents that HUD had actually provided the EEO investigator.[77]  Regardless, as Defendant points out, Mayfield does not allege that the notes were altered, show any discrimination, or that Defendant failed to produce the handwritten notes.[78]  Therefore, even

---

[72] *Id.* at 33.
[73] *See generally id.*; Pl.'s Compl., ECF No. 1.
[74] Pl.'s Compl. at 30, ECF No. 1; Def.'s App. at 186, ECF No. 37.
[75] *See generally* Pl.'s Br., *see also* Pl.'s Compl., ECF No. 1.
[76] Pl.'s Br. at 39–40, ECF No. 40.
[77] Def.'s Reply at 14–15, ECF No. 42.
[78] *Id.*; *see generally* Pl.'s Br., ECF No. 40.

assuming that Mayfield's allegations are correct, the typed notes are not evidence of discrimination. Accordingly, the Court finds that Mayfield has failed to show that the typed notes are substantial evidence of pretext.

Based on the forgoing, the Court finds that Mayfield has failed to carry her burden to establish that Defendant's stated nondiscriminatory reasons were pretextual. Consequently, there is no dispute of material fact as to Mayfield's Title VII Sex Discrimination–Failure to Promote to the Managing Attorney Position–Pretext claim. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** with regard to that claim.

### B.  Title VII Retaliation–Failure to Promote[79]

The same *McDonald Douglas* framework that applies to Title VII discrimination claims also applies to Title VII disparate-treatment retaliation claims, as is alleged here. *LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 388–89 (5th Cir. 2007). An employee establishes a prima facie case by showing that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Zamora v. City of Houston,* 798 F.3d 326, 331 (5th Cir. 2015) (citation omitted). In her Complaint, Mayfield alleges one Title VII disparate-treatment retaliation claim: "Retaliation – Failure to Promote" to the Managing Attorney Position.[80] Just as with Mayfield's other claims,

---

[79] In her response, Mayfield states that she "waives her reprisal claims that Defendant intentionally delayed her lateral reassignment from Trial Attorney to Attorney-Advisor, substantially limited Mayfield's work assignments during the informal EEO process, assigned a disproportionate amount of work to Mayfield to hinder her efforts in filing her formal discrimination complaint, announced in a staff meeting and an email that Mayfield required mentoring when Mayfield had years of experience working for HUD in most of its programs, and isolated Mayfield with very minimal contact with her managers and young team members." Pl.'s Br. at 42 n.33, ECF No. 40. However, a review of Plaintiff's Complaint reveals that Mayfield did not bring any of these claims. Pl.'s Compl. at 45–58, ECF No. 1. In fact, Mayfield only pled one Title VII retaliation claim for failure to promote to the Managing Attorney position. *Id.* at 57–59 (Count XI). Accordingly, to the extent they were pled, Defendant's motion is **GRANTED** as to the claims listed above as they were "waived" by Mayfield.

[80] Pl.'s Compl. at 57–58, ECF No. 1.

Defendant does not dispute that Mayfield has established a prima facie case.[81]

However, because the same *McDonald Douglas* framework applies to this claim, and this claim involves the same alleged failure to promote to the Managing Attorney Position as the previously discussed discrimination claim, the analysis is the same.  Therefore, the Court finds that there is no dispute of material fact as to Mayfield's Title VII Retaliation–Failure to Promote to the Managing Attorney Position claim.  Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** with regard to that claim.

### C.  ADEA Claims

Turning now to Mayfield's ADEA claims, the Court' review of the parties' briefs, summary judgment evidence, and the applicable law reveals that genuine issues of material fact preclude summary judgement in favor of Defendant.  Accordingly, Defendant's Motion for Summary Judgment is **DENIED** with regard to Mayfield's ADEA claims.

### IV.  CONCLUSION

For the reasons set out above, Defendant's Motion for Summary Judgment (ECF No. 35) is **GRANTED in part** with regard to Mayfield's claims for: (1) "Sex Discrimination-Failure to Promote as ARC Litigation-Pretext;" (2) "Sex Discrimination-Failure to Promote as Managing Attorney-Pretext;" (3) "Discrimination-Hostile and Abusive Work Environment;"[82] and (4) "Retaliation-Failure to Promote."  Defendant's Motion for Summary Judgment is **DENIED in part** with regard to Mayfield's claims for: (1) "Sex Discrimination-Failure to Promote as ARC Litigation-Mixed Motive;" (2) "Age Discrimination-Failure to Promote as ARC Litigation-Pretext;" (3) "Age Discrimination-Failure to Promote as ARC Litigation-Mixed Motive;" (4) "Sex

---

[81] Def.'s Br. at 19–20, ECF No. 36; Def.'s Reply at 4, 24, ECF No. 42.

[82] As previously explained, summary judgment is warranted because Mayfield waived her Discrimination-Hostile and Abusive Work Environment claim.  Pl.'s Resp. at 7 n.1, ECF No. 39; Pl.'s Br. at 1 n.1, ECF No. 40.

Discrimination-Failure to Promote as Managing Attorney-Mixed Motive;" (5) "Age Discrimination-Failure to Promote as Managing Attorney-Pretext;" and (6) "Age Discrimination-Failure to Promote as Managing Attorney-Mixed Motive." Finally, the Court concludes that it is appropriate to **CARRY** Defendant's motion with regard to Plaintiff's "Retaliatory Hostile Work Environment" claim to the upcoming bench trial.

   **SO ORDERED** this **24th** day of **April, 2023**.

Reed O'Connor

**UNITED STATES DISTRICT JUDGE**